COOLEY LLP
WHITTY SOMVICHIAN (194463)
(wsomvichian@cooley.com)
REECE TREVOR (316685)
(rtrevor@cooley.com)
EMILY BORN (360427)
(eborn@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone:     (415) 693-2000
Facsimile:     (415) 693-2222

Attorneys for Plaintiff
GOOGLE LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOOGLE LLC, a Delaware limited liability company,<br><br>        Plaintiff,<br><br>    v.<br><br>MUHAMMAD YASIR KHATRI, an individual, and DOES 1–20,<br><br>        Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Google LLC ("Google"), by and through its attorneys of record, brings this action against Defendants Muhammad Yasir Khatri and Does 1–20 for (1) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; (2) breach of contract; (3) inducement of contractual breach in violation of California law; and (4) false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Google alleges as follows:

**1.**    This action seeks to stop Defendants' scheme to sell and post fake reviews for business listings on Google's services such as Google Maps. Working through their companies Reviews Company and KMJEE Soft Ltd, Defendants claim that they can and will author or procure positive reviews for any business listed on Google Maps—and that those reviews will evade Google's scrutiny. Defendants provide these "services" for businesses they have never visited, instead posting fraudulent and misleading reviews for financial gain and at the cost of both businesses and consumers who rely on reviews.

**2.**    Google Maps provides (among other things) detailed public listings of local businesses with accompanying ratings and reviews submitted by Google Maps users. The authenticity of these reviews is essential to businesses, their customers, and Google. Online ratings and reviews, such as those found on Google Maps, play a crucial role in influencing the decisions of numerous potential customers when they are searching for businesses to engage with. Accordingly, these ratings and reviews must offer genuine information about a company's products and services.

**3.**    For these reasons, Google employs numerous methods to prevent and remove fake or otherwise inappropriate reviews on Google Maps. As part of these initiatives, Google has determined that Defendants are engaged in an ongoing pattern of fraudulent conduct by posting fake reviews—just as they say they do on their websites—for businesses listed on Google Maps. This violates Defendants' contracts with Google and California law, and their misleading advertisements about their reviews' veracity and credibility violate the federal Lanham Act.

**4.**    Defendants' conduct harms consumers by giving them fake information about businesses and obscuring genuine reviews. Internet users rely on Google Maps and other Google products to compare businesses and decide which merchants to patronize. When a business's

reviews do not reflect consumers' real experiences with that business, it provides members of the public with false and inaccurate information about the quality of that business's goods or services. Such fake reviews also crowd out reports of real consumers' interactions with a business, potentially turning a string of genuine negative reviews that might cause prospective patrons to go elsewhere into apparent outliers. Defendants' conduct likewise harms legitimate businesses by enabling unscrupulous competitors who purchase Defendants' false and misleading reviews to unfairly siphon customers away from law-abiding firms.

5.      Finally, Defendants' conduct poses a risk of irreparable injury to Google by undermining its credibility with Google Maps users and threatening to make Google Maps less attractive for consumers seeking information about local products and services—and for businesses that would otherwise rely on Google to publicize their services to potential patrons. Google brings this action to put an end to Defendants' fraudulent conduct and the ongoing harm Defendants are causing to Google, Google users, and business owners.

## PARTIES

6.      Google LLC is a limited liability company organized under the laws of the state of Delaware with its principal place of business located at 1600 Amphitheatre Parkway, Mountain View, California 94043.

7.      Google is informed and believes, and on that basis alleges, Defendant Muhammad Yasir Khatri is an individual who currently resides in Pakistan, where he has resided at all relevant times.

8.      Google is informed and believes, and on that basis alleges, that Mr. Khatri is associated with and/or controls Reviews Company and KMJEE Soft Ltd, companies through which he sells fake Google reviews. Among other indicia, Mr. Khatri is listed as the registered director of KMJEE Soft Ltd, which has the same address as Reviews Company.

9.      Google does not know the true names and capacities of those defendants sued as Does 1–20 (the "Doe Defendants") and therefore sues them under fictitious names. On information and belief, some or all of the Doe Defendants are individuals or entities that post fraudulent reviews using Google products at the direction of other Defendants. Google will amend this Complaint to

1    allege the true names and capacities of these Doe Defendants if and when they are ascertained.

2                    **JURISDICTION, VENUE, AND DIVISIONAL ASSIGNMENT**

3        **10.**    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this is a

4    civil action arising under the federal Lanham Act, 15 U.S.C. § 1051 *et seq*. The Court has

5    supplemental jurisdiction over all other claims pursuant to 28 U.S.C. § 1367 because all claims

6    herein form part of the same case or controversy under Article III of the United States Constitution.

7        **11.**    This Court has diversity jurisdiction under 28 U.S.C. § 1332, as (1) the parties on

8    each side of the case are citizens of different nations, and (2) the amount in controversy exceeds

9    the sum of $75,000.00 exclusive of interests and costs, including Google's expenses incurred to

10    investigate Defendants' conduct, and the damage to Google's goodwill resulting from Defendants'

11    damage to user's confidence and trust in Google's services.

12        **12.**    This Court has personal jurisdiction over Defendants because each Defendant

13    consented to the jurisdiction of the federal or state courts of Santa Clara County, California, by

14    agreeing to Google's Terms of Service and the choice of venue provision therein, as discussed in

15    more detail below.

16        **13.**    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) as a substantial part of

17    the events or omissions giving rise to the claims occurred in this District, including the harm that

18    Defendants caused Google and other individuals and entities in this District. In addition,

19    Defendants consented to venue in this District by agreeing to Google's Terms of Service and the

20    choice of venue provision therein, as discussed in more detail below.

21        **14.**    This action is properly assigned to the San Jose Division of this District under Civil

22    Local Rule 3-2(c) because Plaintiff Google is headquartered in Santa Clara County, which is served

23    by the San Jose Division.

24                            **FACTUAL BACKGROUND**

25                            **GOOGLE MAPS & REVIEWS**

26        **15.**    Google is a well-known provider of an Internet search engine and other online

27    services. One such service is Google Maps, which is free to use and has over one billion monthly

28    active users. Google Maps displays not only traditional map features like streets and topography,

but also clickable profile pages detailing information about businesses, service providers, and other places of interest. These pages, known as "local listings," span an enormous variety of businesses and professionals around the United States and the world. These include, just to name a few, restaurants, car mechanics, accountants, museums, dentists, hair salons, airports, law firms, government agencies, retail stores, and amusement parks. Google displays local listings on Google Search and Google Maps.  New local listings may be created by businesses themselves, automatically created by Google, or suggested by members of the public.

16.    Businesses can sign up for a Business Profile, a Google service that offers them a suite of tools to manage their business's local listing on Google. To create a new Business Profile or claim an existing local listing as a Business Profile, a user must accept both Google's Terms of Service and the Google Business Profile Additional Terms of Service for Business Entities ("Google Business Profile TOS").

17.    Internet users can browse Google Maps or Google search to explore local listings in a given area and run searches to find a particular business or type of business near a specific location. These listings display certain information about a business, including its street address, hours, and website. For example, the local listing for the Googleplex, Google's campus in Mountain View, California, appears below:



18.    Importantly for this case, local listings also feature user-created ratings and reviews of the business associated with each listing. To be useful to consumers, these reviews must be based

on authentic experiences with the business.

19.    Anyone browsing the Internet can view local listings and reviews, but a user must create and log into a free Google account in order to post a review on a local listing. Signed-in Google users may award a business between one and five stars, and they can also post a narrative description of their experiences with the business. Once a user creates a review, that review is visible publicly on the business's local listing, along with the user's name and profile picture. The local listing also displays the business's average star review on its main local listing page. In the example above, for instance, the Googleplex's local listing reflects 9,629 reviews, averaging 4.2 out of 5 stars.

20.    Particularly because these averaged review scores often appear on Google Maps and in other Google services before a user even clicks on the associated local listing, they can provide an important tool for consumers to identify the best-regarded business of a particular type in a particular area. Consider, for example, the below search in Google Maps for "San Francisco landmarks," which illustrates how a user looking for a particular type of establishment might compare different businesses based on the star reviews in their local listings.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20



21      **21.**     Reviews on Google Maps are critically important to users, businesses, and Google.

22  Users rely on reviews to make informed decisions about which businesses to patronize (or not).

23  Businesses, in turn, stand to gain when happy customers post positive reviews that direct new

24  customers their way. Google, for its part, benefits from maintaining a helpful service that users will

25  turn to for accurate, trustworthy information.

26      **22.**     By contrast, when reviews are fake or misleading, everyone involved suffers. Users

27  are left with inaccurate information. Businesses with legitimate reviews lose revenue to those with

28  illegitimate ones. And Google loses credibility and goodwill among misled users and frustrated

businesses, making both less likely to turn to Google products in the future.

**DEFENDANTS' CONNECTION TO REVIEWS COMPANY AND KMJEE SOFT**

23.    Defendant Khatri is the sole registered director and controlling stakeholder of KMJEE Soft Ltd according to United Kingdom business registry records. These records list his name as Muhammad Yasir Khatri, show that his date of birth is in October 1993, and indicate that he is a Pakistani resident and national. They also indicate that KMJEE Soft Ltd was dissolved in July 2025 after it failed to file required papers with the U.K. government.

24.    The listed address for KMJEE Soft Ltd is 2 Frederick Street, London, WC1X 0ND, United Kingdom. This appears to be the address of the company's incorporating agent, which indicates on its website that it specializes in forming corporate entities for non-U.K. residents.

25.    The Reviews Company webpage lists this same Frederick Street address on the homepage:



COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**COMPLAINT**

26.    Under the "Contact Us" tab, the Reviews Company webpage lists a different address along with the email address reviewscompany1@gmail.com:



FIND US
206A Dryden Rd, PMB 609, Ithaca, NY 14850, United States



SAY HI
reviewscompany1@gmail.com

CALL ME
+1 315-830-2273

27.    Google internal records demonstrate that reviewscompany1@gmail.com lists yasirkhalid1993@gmail.com (the "Yasir Khalid 1993 Account") as the account's recovery email address. The Yasir Khalid 1993 Account in turn lists yasirkhalid93@gmail.com as its recovery email address.[1] The display name for yasirkhalid93@gmail.com is "Muhammad Yasir Khalid." Based on Defendant Khatri's 1993 year of birth and the "Muhammad Yasir" name he recorded with KMJEE Soft's formation paperwork, "Muhammad Yasir Khalid" appears to be Defendant Khatri.

28.    As detailed below, the pricing and the language used to describe the services offered by both Reviews Company and KMJEE Soft is identical.

### DEFENDANTS' ADVERTISEMENTS AND FALSE CLAIMS

29.    On their two companies' websites, Defendants seek to exploit customers' reliance on reviews when making important decisions about which businesses to patronize—and businesses' related desire for positive reviews—for their own financial gain. For a fee, Defendants will generate for *any* business—regardless of quality—glowing reviews, posted on that business's Business Profile by a purportedly "satisfied" customer. Google is informed and believes, and on that basis alleges, that a substantial proportion—if not all—of Defendants' reviews are fraudulent,

---

[1] A recovery email is a secondary email account used to verify a primary account or regain access in the event a user is locked out of their account.

written by users who have *never* visited, patronized, or otherwise experienced the business they are reviewing and posted to deceive customers and manipulate Google search results.

30.    The Reviews Company website, reviews-company.com, advertises "Google Maps Services" and states "We are the world's leading supplier of Reviews to Boost your social presence today!" The website offers three pricing plans: a basic package including "5 Google Reviews," the "most popular" package including "10 Google Reviews," and the "Greatest Deal" package including "20 Google Reviews." Each option promises that "All Accounts will be Authentic" and "100% Reviews will be Shown." Each also lists "Drip-feed Option," indicating that reviews will not all be posted at once, which Defendants suggest will help evade Google's measures to detect false reviews by better mimicking humans posting real reviews.



31.    The statement "100% Reviews will be Shown" is misleading and false because it is impossible for Defendants to guarantee what reviews will be shown on Google Maps. Defendants do not have the ability to control what reviews are shown, as no entity other than Google itself does. Additionally, based on Google's investigation, many of the reviews posted by Defendants' accounts were flagged by Google's spam detection systems and removed. Defendants' suggestion that they can circumvent Google's mechanisms for detecting and removing false reviews harms Google by casting doubt on Google's enforcement abilities and the genuineness of Google Reviews that are shown. Such misrepresentations disparage Google and harm Google's reputation. This costs

Google users because at least some users who do not trust the genuineness of Google reviews will not use Google services. Reviews Company's website promises that "The reviews that we provide will stick to your Google Maps Listing as they are submitted for you manually." Again, this statement is misleading and false because it is impossible for Defendants to guarantee what reviews will be shown, and suggesting otherwise harms Google's reputation as effective at detecting and removing false reviews. Indeed, based on Google's investigation, many of the reviews posted by Defendants' accounts were flagged by Google's detection systems and removed.

32.     The website also touts the service as "Anonymous & Discreet," suggesting Defendants are aware that this conduct violates the Google Terms of Service, as discussed below, and other Google policies, necessitating anonymity and discretion.

33.     On the tab titled "Google Review Service," the website discusses the supposed "advantage of buying Google reviews."

34.     Under a prominent "Buy Google Reviews" heading, Defendants hawk their services by claiming that "it is better to buy positive Google reviews and display them as a badge of honor to gain customers' trust." Specifically appealing to business owners' need to win customers using Google services, Defendants urge that "[y]our potential customer is paying attention to the reviews! Make sure they are reading all the good things about your business."



ENHANCE YOUR BUSINESS RANKINGS, OUTSHINE YOUR COMPETITORS
### Buy Reviews

People solidly rely on online reviews when they're choosing whether or not to do business with you. Eighty-four percent of individuals trust these reviews as much as they do word-of-mouth recommendations.

Google supports consumer-written reviews for businesses and adding them to the company's Google Business listing. When potential regulars search your business on the search engine, they can quickly access your reviews.

Oftentimes Google is the very first connection between a potential purchaser and a brand. From local restaurants to easy-to-maintain office plants, we search everything on Google. Clearly, Google has recognized the need for reviews and offers its own platform

In this case, it is better to buy positive Google reviews and display them as a badge of honor to gain customers' trust. Your potential customer is paying attention to the reviews! Make sure they are reading all the good things about your business.

35.    Under the heading, "Why Reviews are Important," the website asserts that "it's extremely vital to purchase out your Google reviews if your review rating is relatively low." It goes on to claim that by "buying Google reviews, you can boost your clients within a small time."

## Why Reviews are Important ?

All should agree on Google business and the receiver the primary spot of communication. Help find forgotten contact numbers and mail address that help you on next trips and keep brand stability. When you rummage around for a keyword that'll appear in primary place, you'll need to know that its rating level is top than the keywords below. Where your submit review Keyword ranking affects the SEO's 1/3%. If wish to search out if you compare one more business with other then you'll be competent to find out the opinion of Google reviews. You might have understood the value of Google reviews. So it's extremely vital to purchase out your Google reviews if your review rating is relatively low.

A fine number of Google reviews in your account will make your patrons starting to consider your business very surely. They'll start to respond more to your every post. That'll very much supporting for your brand or business.

Furthermore, buying Google reviews, you can boost your clients within a small time. So, this procedure is extremely efficient. Particularly, it's a incredible blessing for the email business holders. It's one reason you'd buy Google reviews.

36.    The Reviews Company Facebook page states "The reviews that we provide will stick to your Google Maps listing as they are submitted for you." Again, this statement is misleading and false because it is impossible for Defendants to guarantee what reviews will be shown (i.e., "stick" to a listing), and suggesting otherwise harms Google's reputation as effective at detecting and removing false reviews.



37.     KMJEE Soft, through the website kmjeesoft.com, offers an identical pricing plan to Reviews Company, using the same language to describe each plan. Just like Reviews Company, KMJEE Soft appears to sell just one product: Google reviews.



38.    The statement "100% Reviews will be Shown" is false and misleading for the reasons stated above.

39.    After clicking "Click Here" on any package, the website viewer is brought to a form which asks "Your Google Review Business Name & Address" and "How Many Reviews In a Week?"



40.    The KMJEE Soft website claims to have 78k satisfied clients, 528+ workers, 82+ contributors, and 221k complete orders.



**DEFENDANTS' FAKE REVIEWS SCHEME**

41.    Based on Defendants' own representations and Google's investigation, Defendants write fake reviews themselves; directly employ individuals to write fake reviews; and/or arrange for third parties, including some or all of the Doe Defendants, to do so in exchange for

compensation.

42.    Defendants' exact practices for posting reviews are unclear, which makes it difficult for Google to determine the relationship between Defendants and their reviewers at this stage. Google will update its complaint to describe the specific methods used by the defendants to obtain fake reviews, as appropriate, after appropriate discovery in this action.

43.    By Defendants' own admission on the KMJEE Soft website, they have posted at least 221,000 fake reviews—and likely many more, since Defendants sell reviews in packages that contain a minimum of five fake reviews.

44.    Defendant Khatri is personally responsible for posting numerous obviously fake reviews on Google Business pages, including through his YasirKhalid1993 Account. This account has left numerous positive reviews for businesses across the United States, despite the account having been created in, and consistently logged into from, Pakistan, where Defendant Khatri lives. This alone suggests that Defendant Khatri did not actually patronize these businesses and that these reviews are not genuine.

45.    The fake reviews that Defendant Khatri has himself posted through his YasirKhalid1993 Account speak for themselves. For example:

(a)    From February 27, 2021 to April 9, 2021, Defendant Khatri left reviews for businesses in Virginia, Alabama, California, New Jersey, Wyoming, Florida, and Missouri. The implausibility of patronizing businesses so far apart in this six-week period also suggests that Defendant Khatri did not actually patronize these businesses and that these reviews are not genuine.

(b)    In the two-month period from November 29, 2021 to January 27, 2022, this account left five-star reviews for three separate lawyers' offices in New York and California. Again, the implausibility of patronizing three separate lawyers' offices in this span of time suggests these reviews are not genuine.

(c)    On October 20, 2021, this account left a review for "Debtech LLC" stating: "I hired Debtech to build the website for my newly established immigration law practice." Yet on February 22, 2022, this account left a review for "Food Truck Promotions" stating, "Food Truck Promotions helped our dream pop-up shop come to life! We were able to set up and start selling

without a hitch thanks to their team." It is implausible one person was actively running a "newly established immigration law practice" while launching a new food truck pop-up, suggesting these reviews are not genuine.

(d)     On March 18, 2020, this account left a review for BOLD Electric & Generator in New Jersey stating, "perfect maintenance service in town!" On June 30, 2020, this account left a review for ProFix Drains & Hydro Jet in California stating, "ProFix came on time, evaluated our issues and fixed them promptly." Then, on August 10, 2020, this account left a review for Triumph Property Management in Nevada stating, "I wish my last property management company was half as responsive as Triumph Property. I'm sure these guys deal with a lot of bs, but the fact that they at least respond to my work orders or requests to amend the property is nice . . . I only went to their office in midtown once." In other words, for these reviews to be true, their poster would have to have lived in three homes in three states in just five months.

(e)     Then, on April 9, 2021, this account left a review for Expo Movers and Storage stating, "Movers did an amazing job. My relocation to Florida went seamless." Despite seemingly living in Florida, on November 29, 2021, this account left a review for Pineapple Roofing in Texas stating, "These guys are amazing, very professional, and did a beautiful job on my home." Then, a few weeks later, on December 6, 2021, this account left a review for Northern Arizona Credit Repair in Arizona stating, "Thank you so much for the great work and professionalism. It's been two months and I am on my way to homeownership." Again, the implausibility of residing in Florida, Texas, and Arizona in less than a year suggests these reviews are not genuine.

(f)     The Reviews Company Facebook page posted on December 7, 2023, about "20 Google Reviews done with company 'London Bus Hire' We provide our clients with genuine Google review services." The page then displays a screenshot of the Google Business page for "London Bus Hire," showing four recent five-star reviews:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20



21

22

**VIOLATION OF GOOGLE'S TERMS OF SERVICE**

23    46.    Google's Terms of Service ("Google TOS") governs a user's relationship with

24    Google, permitting them to use Google's services in exchange for following certain rules and

25    guidelines.

26    47.    In addition to these overarching Terms of Service, users must also agree to "service-

27    specific additional terms," which are terms and policies that apply to a specific Google service.

28    48.    Google users who contribute to Google Maps are not only required to agree to the

Google TOS, but also subject to the Maps User-Generated Content Policy ("Maps Policy").

49.     To post reviews on Google Maps, the user must first sign in to or create a Google Account.

50.     At each step of the process to create a Google Account, the user is consistently shown a hyperlink to the Google TOS, labeled "Terms":



Clicking on the hyperlink will bring the user to the Google TOS. (**Exhibit A**).

51.     At the final step of the account creation process, the user must explicitly agree to the Google TOS and Google's Privacy Policy on a page titled "Privacy and Terms," as shown below. The page specifies that "[t]o create a Google account, you'll need to agree to the Terms of Service below." "Terms of Service" appears in bolded blue text and functions as a hyperlink to Google's operative terms. To proceed past this screen and finish creating an account, the user must press a blue button at the bottom of the screen labeled "I agree."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

COMPLAINT

52. At all relevant times, the Google TOS has included California forum selection and choice of law clauses. Specifically, the Google TOS provides that "California law will govern all disputes arising out of or relating to these terms, service-specific additional terms, or any related services, regardless of conflict of laws rules" and that such "disputes will be resolved exclusively in the federal or state courts of Santa Clara County, California, USA, and you and Google consent to personal jurisdiction in those courts." **Exhibit A**. By agreeing to the Google TOS, a user is by definition accepting California law and consenting to personal jurisdiction in California.

53. The Google TOS, which provides specific rules for user-contributed content, also expressly references the service-specific terms and policies by providing a direct link to a page containing all of those terms and requires the user to "comply with" these additional terms. **Exhibit A**. In doing so, the Google TOS thereby incorporates the service-specific terms, making the content of such service-specific terms part of the Google TOS. Google gives users, whether they are signed into a Google account or not, "permission to access and use [Google's] services" if they "agree to follow these terms." *Id.*

54. The Google TOS expressly prohibits the creation of fake content, providing that users "must not abuse, harm, interfere with, or disrupt our services or systems" by "creating fake accounts or content, including fake reviews" or by "providing services that encourage others to violate these terms." **Exhibit A**.

55. The Google TOS incorporates by reference the Maps Policy. At all relevant times, the Maps Policy was designed "to help ensure that everyone viewing [user generated content] has a positive experience." **Exhibit B**. It provides that contributions must be "***based on real experiences and information***," and prohibits "[d]eliberately fake content" and "incorrect content." *Id.* (emphasis added). These policies reflect that Google "work[s] hard to make sure content published by our users is helpful and reflects the real world." *Id.*

56. Under the "Prohibited & restricted content" policies and guidelines, which also apply to users contributing to Google Maps under the Maps Policy, Google mandates that reviews must be genuine and should accurately represent a user's real experience with a business. **Exhibit C**. It then specifies that prohibited content includes "[c]ontent that is not based on a real experience

and does not accurately represent the location or product in question." *Id*.

57.    Defendant Khatri created at least three Google accounts, meaning that he necessarily proceeded through the account creation process—and entered into contracts with Google by accepting the Google TOS and the Maps Policy—as described above. Likewise, each and every Doe Defendant and other party who posted fake content on Google Maps could not have done so without creating a Google account and agreeing to be bound by the Google TOS and the Maps Policy.

58.    Defendants breached the Google TOS by posting or inducing third parties (including without limitation some or all of the Doe Defendants) to post deliberately fake content, not based on real experiences and information, on Google Maps. Google is informed and believes, and on that basis alleges, that Defendants know and knew during all relevant times that the Google TOS and the Maps Policy apply to the relationship between Google and users who post reviews. Because Defendants' business involves posting reviews on Google and elsewhere, it follows that they must be aware that a user account is required to do so, and that one must accept the Google TOS to create such an account.

59.    The Maps Policy also requires merchants to adhere to certain guidelines in representing their businesses on Google Business Profiles. These same requirements are set forth in Google Business Profile TOS, which provides, "To use the Google Business Profile Services and any related services, features, and functionality (the "Business Profile Services"), a business entity must accept (1) the Google Terms of Service, and (2) these Google Business Profile Additional Terms of Service." **Exhibit D**. The "Prohibited & restricted content" guidelines, which apply to both the Google Business Profile TOS and Maps Policy, specifically provides that Google does not allow businesses to "[s]olicit or encourage the posting of content that does not represent a genuine experience." **Exhibit C**. Google also prohibits merchants from "[o]ffer[ing] incentives – such as payment, discounts, free goods and/or services – in exchange for posting any review or revision or removal of a negative review." *Id*. Google Business Profile users who purchase Defendants' fake reviews violate this policy, since they both "[s]olicit" the fake reviews and offer "payment" for them. These merchants therefore breach the Google TOS and Google Business

Profile TOS to which they agreed when they created the Google accounts necessary to use Google Business Profiles.

60. Google is informed and believes, and on that basis alleges, that Defendants know and knew during all relevant times that the Google TOS and the Google Business Profile TOS apply to the relationship between Google and users who use Google Business Profiles. Because Defendants' business involves posting reviews on Google Business Profiles, it follows that they must be aware that a user account is required to do so, and that one must accept the Google TOS to create such an account and accept the Google Business Profile TOS to use Google Business Profiles.

### REPUTATIONAL HARM TO GOOGLE AND HARM TO ITS CUSTOMERS

61. By disrupting Business Profiles, Search, and Maps with false and misleading information, Defendants' conduct has undermined Google's credibility, tarnished Google's brand, and caused some Google users and businesses to lose trust in, and eventually avoid using, Google's services. By disseminating false and misleading information that affects the quality of services that the customers receive, Defendants' conduct also causes direct harm to Google users and the honest businesses that rely on Google to provide a fair platform.

62. Google's reputational harm continues to grow as a result of the increasing prevalence of lead generation and fake review schemes. Despite Google's diligent efforts to detect and remove fake reviews, due to the sophisticated and evolving tactics designed to evade enforcement, some fake reviews may evade initial detection and appear online in violation of Google's various terms of service and policies. This can result in complaints to Google about quality and reliability off the reviews on the local listings, which affect the profitability of their business and the user's faith in Google's services. These customer complaints show how easily a Google user's trust in Google's services can be lost, often times by one bad experience with a fake reviewer online.

63. Defendants' acts have caused and are continuing to cause irreparable injury to Google. An award of money damages alone cannot fully compensate Google for its injuries, and Google lacks an adequate remedy at law. Unless Defendants are enjoined, Defendants will continue

to sell fake reviews, and Google will continue to suffer.

## CAUSES OF ACTION

### COUNT I: BREACH OF CONTRACT
*(AGAINST ALL DEFENDANTS)*

64.     Google realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

65.     To the extent Defendants themselves posted fake content on Google, Defendants entered into binding and enforceable contracts with Google by expressly agreeing to Google's TOS, as set forth above.

66.     Google has fully performed its obligations under the Google TOS.

67.     Defendants breached their contractual obligations under the Google TOS in a number of ways, including by posting on Google Maps deliberately fake content that was not based on real experiences. Defendants breached at least the following provisions:

- "You must not abuse, harm, interfere with, or disrupt our services or systems — for example, by . . .  creating fake accounts or content, including fake reviews" or by "providing services that encourage others to violate these terms." **Exhibit A**.

- "Contributions to Google Maps should reflect a genuine experience at a place or business. Fake engagement is not allowed and will be removed." **Exhibit C**.

- Prohibited content includes "[c]ontent that is not based on a real experience and does not accurately represent the location or product in question." **Exhibit C**.

68.     As set forth above, as a result of Defendants' breach of the Google TOS, Defendants have caused Google to be damaged in an amount to be determined at trial, including by forcing Google to incur expenses to investigate and remedy Defendants' breach and by undermining users' confidence and trust in Google services including Google Maps and local listings on Google.

### COUNT II: VIOLATION OF CAL. BUS. & PROF. CODE § 17200
*(AGAINST ALL DEFENDANTS)*

69.     Google realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

70.     Defendants' sale and authorship of fake Google reviews is contrary to the Federal Trade Commission ("FTC")'s regulations governing the use of endorsements and testimonials. Those rules require that endorsements "reflect the honest opinions, findings, beliefs, or experience of the endorser" and prohibit "any express or implied representation that would be deceptive if made directly by the advertiser." 16 C.F.R. § 255.1(a). Defendants violate this provision by posting reviews of businesses they have never patronized and whose products and services they have never experienced, all while falsely and deceptively implying to readers that they have.

71.     Violation of FTC regulations is an unlawful business practice under California's UCL, Cal. Civ. Code § 17200.

72.     Defendants' unlawful business practices have directly resulted in economic harm to Google, including the costs of Google's investigation into those practices and the impact on Google's credibility, goodwill, and user experience.

73.     Absent an injunction prohibiting these unlawful business practices, Defendants are likely to continue posting fake reviews in violation of FTC regulations and the UCL, including by creating or using new and different Google accounts and public-facing websites to evade Google's attempts to detect and prohibit Defendants' fake reviews. Google faces irreparable harm from the ongoing impact of such fake reviews on Google's credibility, goodwill, and user experience.

### COUNT III: INDUCEMENT OF CONTRACTUAL BREACH BY REVIEWERS
#### *(AGAINST ALL DEFENDANTS)*

74.     Google realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

75.     To the extent Defendants, including without limitation some or all of the Doe Defendants, induce others to post fake content on Google, Defendants induced such individuals to breach a valid contract with Google.

76.     Individuals who posted content on Google on the instruction of Defendants entered into binding and enforceable contracts with Google by expressly agreeing to Google's TOS. As set forth above, it is impossible to create a Google account without accepting the Google TOS, and it is impossible to post a review on Google business listings without creating a Google account.

77.     Google is informed and believes, and on that basis alleges, that at all relevant times, Defendants knew that only users who had agreed to the Google TOS and signed into their Google accounts could post reviews on Google, and thus that binding and enforceable contracts existed between Google and the individuals they enlisted to post fake reviews on Google.

78.     Google is informed and believes, and on that basis alleges, that Defendants intentionally induced and enabled these third parties to create fake reviews on Google Maps, as set forth above, for Defendants' own monetary gain.

79.     Google is informed and believes, and on that basis alleges, that these individuals breached their contractual obligations under the Google TOS in a number of ways, including by posting on Google Maps deliberately fake content that was not based on real experiences as a result of Defendants' inducement.

80.     Google is informed and believes, and on that basis alleges, that at all relevant times, Defendants knew that the Google TOS prohibited posting fake content on Google, and thus that violation of the Google TOS was a necessary consequence of their inducing these individuals to create fake reviews on Google Maps, as set forth above.

81.     As set forth above, as a result of these individuals' breaches of the Google TOS, Defendants have caused Google to be damaged in an amount to be determined at trial, including by forcing Google to incur expenses to investigate those breaches and by undermining users' confidence and trust in Google services including Google Maps, Google Business Profiles, and local listings.

## COUNT IV: INDUCEMENT OF CONTRACTUAL BREACH BY BUSINESSES
### *(AGAINST ALL DEFENDANTS)*

82.     Google realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

83.     To the extent Defendants, including without limitation some or all of the Doe Defendants, induced business owners that use Google Business Profiles to purchase fake reviews for their businesses, Defendants induced such businesses to breach a valid contract with Google.

84.     Businesses with active Google Business Profiles entered into binding and

enforceable contracts with Google by expressly agreeing to Google's TOS and Google Business Profile TOS, as set forth above. To the extent those businesses with active Google Business Profiles purchased fake reviews from Defendants, those Defendants violated Google's TOS and Google Business Profile TOS.

85.    Google is informed and believes, and on that basis alleges, that at all relevant times, Defendants knew that businesses that had claimed their Business Profile had agreed to Google's TOS and Google Business Profile TOS, and thus that binding and enforceable contracts existed between Google and the business.

86.    Google is informed and believes, and on that basis alleges, that Defendants intentionally induced and enabled these businesses to violate the Google TOS and Google Business Profile TOS for Defendants' own monetary gain.

87.    Google is informed and believes, and on that basis alleges, that at all relevant times, Defendants knew that the Google TOS and Google Business Profile TOS prohibited posting fake content on Google, and thus that violation of the Google TOS and Google Business Profile TOS was a necessary consequence of their actions.

88.    As set forth above, as a result of inducing these individuals' breaches of the Google TOS and Google Business Profile TOS, Defendants have caused Google to be damaged in an amount to be determined at trial, including by forcing Google to incur expenses to investigate those breaches and by undermining users' confidence and trust in Google services including Google Maps and Google Business Profiles.

## COUNT V: FALSE ADVERTISING (15 U.S.C. § 1125(a)(1)(B))
### *(AGAINST ALL DEFENDANTS)*

89.    Google realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

90.    Defendants have made material, false and misleading representations of fact in commercial advertisements about the nature, characteristics, and qualities of Defendants' services and Google's products and services, including statements such as those described above that "100% Reviews will be Shown" and that the reviews will "stick." These false and misleading statements

have deceived and/or are likely to deceive a substantive segment of the buying public. Such statements undermine Google's measures to ensure the integrity of its platform.

91.    Defendants' fake reviews are also misleading, as they purport to represent the actual experiences of consumers with a reviewed business.

92.    Because businesses and users rely on accurate Google Business Profile information, including reviews to attract and patronize businesses, such fake reviews and verification claims are likely to harm goodwill in and the reputation of Google's services.

93.    Defendants have made such statements in commercial advertising or promotion in interstate commerce, namely, on Defendants' websites and in Business Profiles.

94.    Defendants' false and misleading claims are material to consumers because the claims are likely to induce consumers to purchase Defendants' services by causing consumers to believe that Defendants are capable of guaranteeing displayed reviews.

95.    Defendants' conduct constitutes false advertisement and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

96.    Defendants' deceptive conduct has injured and continues to injure consumers, and is likely to cause and has caused harm to Google. Unless Defendants are enjoined by this Court pursuant to 15 U.S.C. § 1116, Defendants will continue to mislead the public and cause harm to Google.

97.    Defendants' false and misleading claims are deliberate, willful, fraudulent, and without extenuating circumstances. Defendants know that their guarantees that reviews will be shown are false because the terms they agreed to–including the Google TOS and the Maps Policy– explain that policy-violating content will be removed. **Exhibit B; Exhibit C** ("Fake engagement [defined as content that does not represent a genuine experience] is not allowed and will be removed."). Additionally, many of Defendants' own reviews were removed. Defendants' conduct is thus an "exceptional case" within the meaning of section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a). Google is therefore entitled to recover three times the amount of its actual damages and the attorneys' fees and costs incurred in this action, as well as prejudgment interest.

## PRAYER FOR RELIEF

**WHEREFORE,** Google respectfully requests the following relief:

**1.**     That Defendants are adjudged to have engaged in unlawful business acts or practices in violation of California's Unfair Competition Law;

**2.**     That Defendants are adjudged to have breached Google's TOS (including the Maps Policy);

**3.**     That Defendants are adjudged to have induced various other Google users to breach Google's TOS (including the Maps Policy) and Google Business Profile TOS;

**4.**     That Defendants are adjudged to have violated 15 U.S.C. § 1125(a)(1)(B) by making material, false, and misleading representations of fact in commercial advertisements about the nature and qualities of Defendants' products and services;

**5.**     That Defendants be permanently enjoined from advertising or posting fake Google reviews not based on a user's actual experience of the associated business's goods or services;

**6.**     That Google be awarded damages in an amount sufficient to compensate it for damages caused by Defendants' acts;

**7.**     That Google be granted such further relief as the Court may deem just and equitable; and

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Google respectfully demands a jury trial of all issues so triable.

Dated: December 22, 2025                    COOLEY LLP


By: _____
       Whitty Somvichian

Attorneys for Plaintiff
GOOGLE LLC